STATE OF NORTH CAROLINA

CLEVELAND County

File No.
21 CVS 95

In The General Court of Justice
☐ District ☒ Superior Court Division

| Name of Plaintiff |
|---|
| HMBC, INC. d/b/a AMERICAN RESTORATION |
| Address |
| |
| City, State, Zip |
| |

**CIVIL SUMMONS**

☐ Alias and Pluries Summons

G.S. 1A-1, Rules 3, 4

**VERSUS**

| Name of Defendant(s) | Date Original Summons Issued |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and WARREN DOUGLAS HARVEY, its agent and employee | Date(s) Subsequent Summon(es) Issued |

**To Each of The Defendant(s) Named Below:**

| Name And Address of Defendant 1 | Name And Address of Defendant 2 |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY<br>c/o NC Department of Insurance<br>Commissioner's Office<br>1201 Mail Service Center<br>Raleigh NC 27699-1201 | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY<br>c/o NC Department of Insurance<br>Commissioner's Office<br>1201 Mail Service Center<br>Raleigh NC 27699-1201 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff) | Date Issued | Time | |
|---|---|---|---|
| Ralph W. Meekins<br>Teddy, Meekins & Talbert, P.L.L.C.<br>1219 Fallston Road<br>Shelby, NC 28150 | 1-21-21 | 3:23 | ☐ AM ☒ PM |
| | Signature | | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | | |

☐ **ENDORSEMENT**

This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

| Date of Endorsement | Time | |
|---|---|---|
| | | ☐ AM ☐ PM |
| Signature | | |
| ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | | |

**NOTE TO PARTIES:** Many Counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts (Over)

EXHIBIT 1

| **RETURN OF SERVICE** |||||
|---|---|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address of Person With Whom Copies Left *(if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

Name And Address of Person With Whom Copies Left *(if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff *(Type or Print)* |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative of the Courts

| STATE OF NORTH CAROLINA | File No.<br>21 CVS 95 |
|---|---|
| CLEVELAND County | In The General Court of Justice<br>☐ District ☒ Superior Court Division |

| Name of Plaintiff<br>HMBC, INC. d/b/a AMERICAN RESTORATION | **CIVIL SUMMONS** |
|---|---|
| Address | |
| City, State, Zip | ☐ Alias and Pluries Summons |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| Name of Defendant(s)<br>STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and WARREN DOUGLAS HARVEY, its agent and employee | Date Original Summons Issued |
| | Date(s) Subsequent Summon(es) Issued |

**To Each of The Defendant(s) Named Below:**

| Name And Address of Defendant 1<br>WARREN DOUGLAS HARVEY<br>2803 SPANGLE ROAD<br>BLOOMINGTON, IL 61705 | Name And Address of Defendant 2 |
|---|---|

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)<br>Ralph W. Meekins<br>Teddy, Meekins & Talbert, P.L.L.C.<br>1219 Fallston Road<br>Shelby, NC 28150 | Date Issued 1-21-21 | Time 3-23 ☐ AM ☒ PM |
|---|---|---|
| | Signature | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

**NOTE TO PARTIES:** Many Counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts (Over)

| | **RETURN OF SERVICE** | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM  ☐ PM | Name of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM  ☐ PM | Name of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff (Type or Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative of the Courts

STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF CLEVELAND | FILED
21 CVS 95

HMBC, INC. d/b/a AMERICAN  2021 JAN 21 P 3: 23
RESTORATION,
CLEVELAND COUNTY C.S.C.

Plaintiff,
BY_____

vs.

STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and WARREN DOUGLAS HARVEY, its agent and Employee

Defendants.

**COMPLAINT**
**(Breach of Contract, Assignment of Benefits)**

**COMES NOW THE PLAINTIFF**, complaining of the Defendants, and alleges and states as follows:

1. The plaintiff HMBC, Inc., d/b/a American Restoration (hereinafter "AR") is a Corporation organized and existing under the laws of the state of North Carolina with its principal place of business in Cleveland County, North Carolina. AR is a licensed general contractor by the State of North Carolina and is engaged in the business of emergency property damage mitigation and repairs.

2. The defendants, State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company, (collectively hereinafter "SF") are Illinois corporations with a principal executive office located in Bloomington, Illinois. At all relevant times mentioned herein, SF was and is engaged in the business of providing insurance to homeowners in Cleveland County, North Carolina and throughout the entire state of North Carolina.

3. At all times relevant to the issues at hand, Warren Douglas Harvey (hereinafter Doug Harvey), was an agent, employee and/or servant of SF and at all times referred to herein, was acting in the course and scope of his employment with SF, and all acts undertaken by him, and all other agents, and employees of SF, were performed on behalf of SF, and SF is vicariously

liable for all said acts and omissions of Doug Harvey and any other agents of SF. Doug Harvey is a citizen and resident Bloomington, Illinois, but upon information and belief, at all times relevant to the issues at hand, he was a citizen and resident of Henderson County, North Carolina.

## FACTS

4. SF entered into a contract of homeowner's insurance (the "policy") with Lawrence Wyatt and Mandy Wyatt, (hereinafter "homeowners") bearing policy number 33B3W1994 and covering property located at 107 Hawk Hollow Lane, Shelby, North Carolina, and said policy was in full force and effect on or about July 26, 2017, and all relevant times referred to herein.

5. The policy issue by SF, upon information and belief, required SF to pay the renovation costs and expenses to remove debris, make repairs, and cover the costs for construction of the homeowner's home if damaged or destroyed by a covered event, such as a fire.

6. Sometime on or about July 26, 2017, the home of Lawrence Wyatt and Mandy Wyatt located at 107 Hawk Hollow Lane, Shelby, North Carolina was substantially damaged by a fire.

7. The homeowners hired AR and entered into a service contract with AR on July 26, 2017 in which AR was to perform emergency services, structural repairs, and other restoration services to the homeowner's home and contents, after the property and its contents were substantially damaged by the fire. (A copy of the service contract is attached hereto as **Exhibit A**).

8. Pursuant to the service contract entered into between the homeowners and AR, the homeowners assigned their rights under the claim they had with SF for damages to their house and the contents of their house to AR, as demonstrated in the attached service contract, and AR now brings this action in its capacity as lawful assignee. The assignment appears on Page

2 of the service contract and all language of said service contract is incorporated herein by reference.

9. Pursuant to the service contract, the homeowner directed SF to pay to AR per the final contractor scope of repairs and/or include contractors name on all payments related to work performed on their home.

10. The homeowners authorized direct payments of any benefits or proceeds to AR. in consideration of AR's agreement to perform services and supply materials and otherwise perform its obligations under the contract.

11. All claims set forth herein are reasonable claims, and pursuant to North Carolina law, and the conduct of SF in this matter, SF had a legal obligation to honor the legally binding assignment of benefits outlined in **Exhibit A**.

12. At all times herein, SF, through its agent Doug Harvey, and perhaps others, was fully aware of the fact that the homeowners had assigned their rights to insurance proceeds to AR. On or about Monday, July 26, 2017, AR emailed a copy of the service contract, including the assignment of benefits contained therein, to SF's agent, Doug Harvey. In addition, AR hand delivered a copy of the service contract to State Farm's agent, Doug Harvey, on the jobsite sometime on or about July 27 or 28 of 2017 where Mason Venable met with Doug Harvey to inspect the scene of the work. Doug Harvey had previously expressed to Mason Venable of AR, and to other employees of AR, that he needed a copy of the contract with the assignment language contained therein, in order to protect AR's rights under the assignment of benefits language in the contract.

13. SF, and specifically agent Doug Harvey, had worked with AR on several prior claims and had always accepted AR's assignment benefits contract and paid AR pursuant to said contract and in fact, on several occasions, plaintiff's agent Doug Harvey, had promised AR's representatives that he would honor AR's assignment of benefits contracts going forward. SF Agent Doug Harvey had advised AR and its representatives that he, as SF's agent, would honor the assignment of benefits clause in SF's claims involving AR, so long as he was provided a copy

of the contract between the homeowner and AR, and so long as there was an assignment of benefits provision in the contract. A copy of the written contract was provided to Doug Harvey, SF's agent as he requested.

14. AR relied upon these assurances and promises made by SF, and its agent, Doug Harvey, in continuing to do business with the insureds of SF and in performing work on their behalf. AR relied upon the promises and course of dealings of this particular agent, Doug Harvey, that he would honor AR's assignment benefits contract entered into with the homeowner and to pay to AR directly the payments related to work performed or include AR's name on the checks. Doug Harvey agreed to honor the assignment of benefits contract between AR and the homeowner in this case, and assured AR that SF would include AR on all checks issued pertaining to work performed under the contract between AR and the homeowner in this case. AR reasonably relied upon these assurances in performing the work for the homeowners in this instance, and SF's failure to honor AR's assignment of benefits agreement, after agreeing to do so, is a breach of contract, and a breach of the assignment of benefits.

15. The homeowners and/or AR made claims for the damages and losses to the homeowner's home to SF as a result of the fire which occurred on July 26, 2017, and SF honored its contract of the insurance, and the assignment contract referenced above up through and until the last payment submitted by SF on October 11, 2017. Up through October 11, 2017, SF had honored the assignment of benefits to AR, and paid AR directly for the work performed under the contract or had placed AR's name on the checks that it issued for the work performed by AR on the house in question. AR reasonably relied upon SF to continue to add AR's name to all checks on this project or pay AR directly.

16. On December 31, 2018 AR presented its last invoice for work performed on the home, and as previously done, delivered the invoice to SF's agent, Doug Harvey, for payment. Rather than paying the invoice directly to AR, or placing AR's name on the check for payment, as it had done on all previous checks related to this project, and as promised by SF's agent Doug Harvey and as required by the assignment of benefits contract (see invoice attached as **Exhibit B**), SF, through its agent, Doug Harvey, issued the check directly to the homeowners.

17. AR has made demand upon the homeowners to pay AR the amount due to it from the invoice, but homeowners have refused to pay AR for the work that it had done. All work done by AR, at the referenced house, was done professionally and in a workmanlike manner, and all invoice's presented by AR to the homeowners and to SF, including the invoice attached as Exhibit B, were reasonable and due and owing.

18. When homeowner failed to pay AR for the work performed on homeowners' home, AR made demand upon SF to pay AR pursuant to the assignment of benefits contract and pursuant to SF's obligation to honor the assignment, but to date, SF has refused to pay AR the amount of it invoice.

## FIRST CAUSE OF ACTION
(Breach of Contract)

19. The allegations of paragraphs 1-18 are incorporated, adopted and realleged as if fully set forth herein.

20. SF was bound by its insurance contract with the homeowners and was obligated by the assignment of benefits language in the service contract between the homeowners and AR to honor the assignment of benefits. SF was provided a copy of the assignment of benefits by written correspondence and by hand delivery and was fully aware of its obligations under the contract or assignment.

21. In addition to SF being fully aware of its obligation to either pay AR for the work performed, or to at least put AR's name on the final payment, SF, through its agent, Doug Harvey, had assured and promised AR that it would honor AR's rights under the assignment of benefits language in its service contract with the homeowners and SF had an obligation to honor the assignment and pay AR directly, or place AR's name on the final check, but, SF failed to do so , and therefore breached its contract with homeowners and AR, and breached the assignment of benefits.

22. In addition to its contractual obligation referenced above, SF, through its prior course of dealings with AR, had created an understanding, enforceable by law, to honor the

assignment of benefits with the homeowners, and AR relied upon this past behavior, and the assurances by SF and its agents that SF would continue to honor AR's assignments of benefits contract in this matter. AR's reliance on SF to honor its assignment of benefits was reasonable under the circumstances, and SF should be held responsible for breaching its agreement, and by failing to honor the assignment of benefits and pay AR for the work performed. AR has been damaged by SF's breach and misconduct in failing to honor, on the occasion in question, the assignment of benefits.

## SECOND CAUSE OF ACTION
## Breach of Covenant of Good Faith and Fair Dealing
## Unfair and deceptive trade practice

23. The allegations of paragraphs 1-22 are incorporated, adopted and realleged as if fully set forth herein.

24. Implied in the insurance policy issued by SF and the assignment of benefits entered into between the homeowner and AR and accepted by SF, was a duty of good faith and fair dealing owed by SF to homeowners, and to AR, requiring SF to give fair consideration to AR's financial interests, and to refrain from acts that would deprive AR from the benefits of the bargain under the policy.

25. Additionally, SF, through its past course of dealings with AR, had established a pattern of behavior which acknowledged and honored AR's assignment of benefits contract, and had assured AR that it would continue to honor its assignment of benefits, but now refuses to do so, in complete disregard of its knowledge of the existence of the assignment of benefits, and its obligation to honor same.

26. By issuing prior checks to the homeowner and to AR, and repeatedly honoring the assignment of benefits, SF, approved of the language in the service contract and accepted responsibility for complying with and honoring the assignment of benefits, and its refusal to

honor same with the last invoice, which is the subject of this claim, is egregious and a breach of its duty of fair dealing. AR relied upon SF prior course of dealing and assurances to its detriment.

27. The actions of SF as alleged within this Complaint violated SF's covenant of good faith and fair dealings and constituted unfair and deceptive trade practices that entitles AR to any and all remedies allowed by law, including a claim for punitive damages, and for treble damages, along with attorney fees.

28. Additionally, the actions of SF as alleged with this Complaint, violated the claims practices that are set out in 11 NCAC 04 of the North Carolina Administrative Code and constitutes prima facia violations of NCGS 58-63-15-(11). Pursuant to 11 NCAC 04.0319(4) of the North Carolina Administrative Code, certain types of insurance issued by insurance companies, must honor proper assignment of benefits, when on notice even if it may have erroneously paid the insured. AR asserts, upon information and belief, that SF is in direct violation of this code. SF homeowner's policy at issue is not the type of insurance directly addressed by 11 NCAC 04.0319(4) of the North Carolina administrative code. AR requests that the Court adopt the reasoning behind the code, to find that SF's actions in this case constituted unfair and deceptive trade practice.

29. SF's actions as described above establish unfair and deceptive acts or practices SF's conduct was affecting commerce, and its conduct caused AR injury.

WHEREFORE, the Plaintiff demands judgment against the Defendants as follows:

1. That the Plaintiff have and recover from the Defendants compensatory damages. losses and all ramifications of them, in an amount to exceed $25,000.00 but not to equal or exceed over $75,000.00;

2. That the Plaintiff have and recover from the Defendants treble damages pursuant to N.C.G.S §75-1.1 up to and including a total award that does not equal or exceed $75,000.00.

3. That the costs of this action, including attorney fees, be taxed to the Defendants;

4. For interest at the maximum legal rate;

5. For a trial by jury on all issues of fact so triable; and

5. That the Court grant such other and further relief as the Court deems just and proper.

This the 21 day of January, 2021.

Teddy, Meekins & Talbert, P.L.L.C.

_____
Ralph W. Meekins
Attorney for Plaintiff
N.C. State Bar No. 13611
1219 Fallston Road
Shelby, NC 28150
(704) 487-1234

  

7-26-19

930 Wendover Heights Drive, Shelby, NC 28150
704-482-7586 *NC*   864-488-8000 *SC* Fax: 704-482-6060 www.AmRest.com

## SERVICE CONTRACT

**Name(s) or Business** Mandy Wyatt Lawrence Wyatt (Client)

**Property Address:** 107 Hawk Hollow Ln, Shelby 28150 **Built Date** 68/69

**Mortgage Co.:** _____  **Loan #:** _____

**Insurance Co.** StateFarm  **Claim #** 33-0893-Q29

**2nd Mortgage Co. and Loan #** _____  **Last 4 digits of SSN#** 8091

**Email** mandywyatt.cc@gmail.com **Phone Number** 828-748-6346

___MW LW___ Emergency Service Contract   ___MW LW___ Structural Repair Contract   ___MW LW___ Content Management Contract
Initial                                   Initial                                 Initial

- American Restoration, **contractor**, and the **client** enter this contract to perform the above indicated services at Client's home or business, using both the final Contractor scope of repairs along with the final dollar amount allowed by the insurance carrier. The amount of the approved project is _____, is projected to be +/- _____ or will be determined at a later date. (Leave blank if unknown or unable to project)
- Either party, at any time and without reason, may terminate this contract. See Termination Agreement on page 4.
- $ 1000 deductible; If an insurance project, Client agrees to pay their deductible directly to Contractor at the time services begin or within two (2) business days of completing this document.
- ___MW___ **Initial** When applicable, Client has been made aware of and provided the NC/SC lead remediation documents and requests contractor to proceed with whatever work they deem necessary.
- Client authorizes contractor to use disinfectants and cleaning chemicals on Client's premises and personal/business property.
- ___MW___ **Initial** (**YES** / NO) (Circle one) Client has respiratory problems, suffers from allergies or has immune suppression issues and requests HEPA Air Cleaning equipment and specialized cleaning products.
- I (we) am (are) the authorized person(s), agent(s), that can bind, the owners and/or responsible parties, my spouse, family member(s), business, business partner(s), Client and all other interested parties to this contract, both personally and professionally, regardless of the incorporated and business status. It is my duty to inform all interested parties of this all inclusive binding contract as Contractor may not be privy to, or in contact with the same.

**Client** Mandy Wyatt — Mandy Wyatt  **Date** 7/26/17
(Sign and Print)

**Client** Lawrence Wyatt  Lawrence Wyatt  **Date** 7/26/17
(Sign and Print)

**Contractor** _____ Todd Pearson  **Date:** 7-26-17
(Sign and Print)

American Restoration Service Contract – Page 1-of-5

010-020.5

Initial MW LW

**EXHIBIT A**

- This contract shall endure and be binding upon the respective heirs, executors, administrators, successors and assignees of the parties herein.
- Client requests that Contractor make every effort to mitigate and prevent further damages to Client's home or business structure and contents.
- Client gives Contractor permission to make "best judgment" decisions in emergency situations where Client, adjuster or carrier is unavailable.
- Client agrees to allow Contractor to share Client's information with Client's bank, mortgage company(s), insurance carriers, adjusters and all other parties that may need to be involved.
- Client agrees to maintain insurance coverage on personal property while off insured location. Client's coverage is primary and Contractor's liability insurance is secondary.
- Client agrees to assume full responsibility for Client's actions when they are differing from that of Contractor.
- Client agrees to leave all Contractor equipment energized and in an "on" position unless otherwise requested by Contractor, to leave the windows and doors closed unless otherwise requested and to keep drying equipment in place a minimum of 3 days unless otherwise recommended. If equipment is not left in the "on" position, Client agrees to the daily charge of the same if disallowed by the carrier unless otherwise agreed to with Contractor.
- Client understands that all work will conform to the National Association of Home Builders and Residential Construction Performance Guidelines, or as close to the standard that Contractor can achieve.
- Client authorizes Contractor to test suspicious material(s) relating but not limited to asbestos, lead, mold and bio hazardous substances and gives Contractor permission to share all test results.
- Client agrees that Client's home or business is now considered a construction site and Client assumes full responsibility for damages or injury if Client enters the premises.
- Client authorizes Contractor the use of any photographs and videos of the damages and repairs in their advertising and promotional materials.

**Insurance Benefits and Direct Payment Authorization**
- Client understands that Contractor is working for Client and not Client's Insurance company or mortgage company(s) thus Client understands that Client is ultimately responsible for payment of provided services and while Contractor will complete the repairs as quickly as possible, Contractor is not being held to any time schedule or penalty clause. Client will be responsible for repairs, fees and expenses that are not covered under Client's insurance policy and Client understands that Contractor is not Client's adjuster or carrier thus Client understands that Contractor cannot confirm or commit coverage.
- Client requests Client's insurance company to pay Contractor direct per the final Contractor scope of repairs and/or include Contractor's name on all payments relating to work performed. If payment should come directly to Client or Client's mortgage company(s), Client agrees to release all funds to Contractor for processing, within 3 business days of receipt, unless directed otherwise by your Third Party Claims Administrator.
- If payment should come with Client's name(s) on the payment, Client agrees to immediately endorse or gives Contractor permission, as attorney-in-fact, to endorse upon receipt, unless directed otherwise by your Third Party Claims Administrator.
- Contractor works and invoices from their final scope and dollar amount. Most often, while the carrier scope differs from Contractor's, the final carrier dollar amount is agreed to with the exception of items stated above that are not covered or approved by the carrier. Carrier line item measurement and calculations do not impact the final Contractor scope and dollar amount. Contractor is not required to give line item credits.
- Structure projects will require a 25% deposit prior to repairs being started. Contractor will also request periodic draws, and if draws are delayed or withheld, Client understands that work will cease and all work to date will be invoiced and subject to the terms of the contract.
- Content projects will be billed and payable by phase of work completed: Pack-out; Cleaning and Storage; Pack-back/Return. Contractor retains the right to hold Client contents held in Contractor's possession until payment has been made for all services performed under this contract.
- Client agrees to pay for all completed work within 10 days of invoice.
- Client assigns any and all insurance rights, benefits, and proceeds on this loss under any applicable insurance policies to Contractor, unless directed otherwise by your Third Party Claims Administrator.
- Client authorizes direct payment of any benefits or proceeds to Contractor. Client makes this assignment and authorization in consideration of Contractor's agreement to perform services and supply materials and otherwise perform its obligation under this contract, including not requiring full payment at the time of services.

American Restoration Service Contract – Page 2-of-5      010-020.5

Initial: _MW_ _LW_

- Client directs Client's insurance carrier(s) to release any and all information requested by Contractor, its representative, or its attorney for the direct purpose of obtaining actual benefits to be paid by Client's insurance carrier(s) for services rendered or to be rendered. In this regard, Client waives their privacy rights including the esx estimate data files and the likes and the comprehensive summation of the loss.
- Client agrees to: current pricing established by DKI Time and Material (T&M), Xactimate, SimSol or Symbility, whichever Contractor selects; and a minimum 25% overhead and 10% profit for T&M, a minimum 10% overhead and 10% profit on all other pricing schedules, based upon the sub-total of work performed by Contractor and its sub-contractors; and that invoice will be based on the final Contractor scope, both verbal and written change orders and final invoice.
- Client agrees not to withhold payment to Contractor due to Client's failure to unpack boxed and stored items that are in Client's possession or control and agree that Client's failure to unpack stored contents does not extend the payment terms of this contract. If Contractor is not allowed to unpack and place contents in their final resting place, Contractor will not be held liable for breakage of content items.
- Client agrees that painting is estimated to go back with as close to matching colors, qualities and finishes as possible but exact matching is not guaranteed. Color, quality and luster changes will be treated as upgrades requiring either verbal or a written change order.
- Client agrees that Contractor will not be held liable for concealed conditions. If hidden damages are discovered during the process, additional expenses will be addressed with a revised estimate, supplement, written or verbal change order if Client is expected to incur the expense.
- Client agrees to select materials and make decisions within 48 hours of the request and submit their selections in writing.
- Client agrees that Contractor is not responsible for additional expense due to exceeding time limits or coverage amounts.
- Client understands that they are allowed up to three (3) free written or verbal "Change Orders." Client agrees to a $250.00 charge per written change order beyond the allowed 3. Client and Contractor agree to both written and verbal change orders. Change Order upgrades will require a 50% deposit at time of agreement.
- Contractor does not make insurance company policy decisions. If Client's carrier elects to repair an area of damage rather than replace, it is Client's option to proceed with the approved repairs or pay the additional cost of full replacement. Examples of a typical insurance related issue is where an insurance adjuster elects to replace only a portion of the kitchen cabinets, to replace only a portion of the laminate/ hardwood floors or to replace only a portion of the roof shingles. Contractor will strive to make the new materials mate with and match the salvaged materials, but Contractor is not responsible for matching, marriage or expansion issues as stated in the Hold Harmless portion of this contract. Contractor warrants only work where all impacted materials are replaced new and marriage, matching and expansion/contraction/settlement issues are not a factor.

Guarantee: Upon payment in full and receipt of a signed Certificate of Satisfaction, Client will receive a 1 year material and a 3 year workmanship warranty on all repairs completed by Contractor and its sub-contractors. The following exceptions apply: Roof warranty is confined to the faulty material and/or workmanship and is confined to 1 year, material and labor, and covers interior damages only if reported immediately and only for the cost to seal and paint the affected ceiling area. No warranty coverage applies to roof vents, pipe vents, skylights, chimneys and flashing unless installed new by Contractor. No warranty applies to work related in or around solar panels or HVC units located on a roof. No warranty applies regarding the presence or return of mold, microbial growth, pathogens, odors or gases. There is no warranty on items discussed in the Hold Harmless section of this contract.

Conflict Resolution

- When concerned or in disagreement with something that Contractor, its employees or sub-contractors have done or are doing, Client agrees to first communicate with the assigned Project Manager, the Project Coordinator or the Operations Manager. Client may call the main office number of Contractor at any time if Client does not gain satisfaction from the assigned manager. Client agrees not to call Client's adjuster, agent or carrier unless Client has first discussed and failed to reach a resolution with the assigned manager or Contractor management.
- Client agrees to provide Contractor a written list of items they are unhappy with and to allow Contractor the opportunity to address and resolve all issues before termination, mediation or arbitration. Termination notice must be written and dated.
- Conflicts and disagreements that Client and Contractor cannot resolve will be resolved through mediation and/or binding arbitration as outlined in the National Association of Home Builders and Residential Construction Performance Guidelines (NAHB) or the American Arbitration Association (AAA), whichever is most applicable. Both parties will continue to be bound

by the language of this contract and agree that all mediation and arbitration proceedings will take place in Cleveland County, North Carolina.
- If payments are delayed or refused by Client, Client agrees to the following: service charges of 1.5% per month, beginning with the last date services were provided; to incur 100% of legal, court and collection costs and agree that the venue of all litigation will be Cleveland County, North Carolina.
- Contractor accepts full responsibility for losses, damages and mistakes that are documented and verified beyond a reasonable doubt. In the event of documented and verified damages, Contractor will, at their option, repair, replace or make a cash settlement, for the damaged item(s). All settlement(s) will be based on the IRS depreciation guideline for the approved Actual Cash Value of the Replacement Cost of the item(s) on the date the damage(s) occurred. If the damaged item(s) are no longer available, settlement will be based on Like Kind and Quality of a similar item, also based on the IRS approved Actual Cash Value of the Replacement Cost of the item(s) on the date the damage(s) occurred. Contractor has the option to use Ebay or a similar source to arrive at a settlement value. If the damaged item(s) in question have no Like Kind or Quality and is a true "One of a Kind" item, the value will be established by a qualified and certified appraiser and will be selected and paid for by Contractor. Contractor is not responsible for the loss of value of non-damaged items that are part of a "Pair or Set" but rather only the damaged item in singular. If Contractor extends payment for a damaged item or items, Contractor is the new owner of the damaged item(s) and has the option of taking possession but is not required to take possession nor responsible for the disposal of the damaged item(s).
- If Contractor has maintained control of Client's contents during a dispute, Client agrees to incur storage and insurance fees on Client's contents. Client agrees to give Contractor permission to sell Client's contents in order to help cover incurred expenses if judgment is awarded to Contractor.
- Client gives Contractor and its affiliates, the authorization to return to Client'sproperty to retrieve and dispose of any materials purchased and provided during the repair/restoration process. Client agrees that both the retrieval and disposal expenses will be in addition to the repair/restoration work that was provided and will be added to the balance due.

Terms and Agreement for Termination of Contract

Termination of the contract is subject to the following:

- If a Client elects to terminate this contract, the Client agrees to pay for all materials, shipping expenses and delivery fees of materials that have been purchased and/or delivered to the job site, in addition to payment for all work that has taken place as per the final Contractor Xactimate, SimSol scope and Invoice, Symbility scope and Invoice or Time & Material Invoice, whichever is greater.
- If Client elects to terminate this contract, the Client agrees to pay Contractor 4% of the repair estimate that was provided.
- If the Client terminates this contract and hires a Public Adjuster or Public Adjusting Firm, Client agrees to pay Contractor 10% of the total claim settlement.

Release and Hold Harmless for Services

- While Contractor cannot guarantee the return of damaged/affected property to the pre-loss condition, every effort to restore affected property will be made. All affected items that fail to be fully restored will need to be addressed with Client's insurance carrier and treated as damage that was the direct result of the initial loss. Client is waiving no rights of collection from the carrier if Contractor cannot repair or restore damaged property to their complete satisfaction. Contractor assumes no responsibility for attempting to clean or restore an item that is later determined to be damaged and/or subject to payment by the carrier. Client agrees that Contractor is entitled to invoice for repair and restoration efforts.
- It is understood that Contractor and its subcontractors are not responsible and will be held harmless regarding the following: pre-existing conditions; items that are not in our itemized inventory or in our care, custody and control; shrinkage, fading, matching, de-lamination and deterioration of drapes, clothing, bedding, upholstery, carpet, rugs and all other fabrics, garments, animal, wood and material products in general; prior construction methods that were faulty or unsound building practices; seams or joints in carpets, tile, laminates, cements, stone, wood and vinyl flooring; imperfections magnified by shiny wall finishes; imperfections to finishes where only minor repairs were permitted vs. the total replacement of the surface; money, jewelry, firearms, medications and medical devices; fine arts, collectibles and "one of a kind" items unless discussed and agreed to at the onset of the job; the removal or alteration of finishes during the cleaning, mitigation, remediation or restoration process; expansion, contraction, cupping, crowning and settlement of tile, vinyl, wood, laminate and all other types of flooring; expansion, contraction and settlement of shingles, rafters and roof decking; expansion, contraction, settlement and nail/screw pops of drywall, plaster and tile walls/ceilings, cracking of grout

joints in ceramic tile walls and floors, cabinets, doors, trim and all other building materials; expansion, contraction and settlement of all kinds; matching and marriage of materials; unaffected materials that were damaged during restoration such as but not limited to walls, floors, cabinets, plumbing fixtures, fabrics of all types and counter tops; gaps, matching or color issues related to new materials meeting existing such as the replacement of a portion of the kitchen cabinets or a portion of the wood floor; color variations and matching issues of any type, unverified and undocumented damage to content and structural items during cleaning, packing, moving, storage and the general restoration process; items stored in a POD type storage unit while on the insured site; items stored within a site outside of or against Contractor's control or recommendations; the contamination by mold, mildew, blood and related pathogens; the contamination by sewer and related pathogens; the contamination by gas of all types, the off gassing of materials, paints, deodorizers, disinfectants, cleaning supplies and all other gas byproducts; possible effects of chemicals used in the cleaning, repair, remediation and mitigation process; the contamination of lead, asbestos and all other pollutants and contaminates; and contamination of the structure and contents outside the custody and control of Contractor; damages resulting from the re-use and re-installation of existing plumbing pipes, supply lines, stops and cutoffs, appliances, water heaters and all other appliances and plumbing fixtures; damages resulting from or may have resulted from the moving of a refrigerator or icemaker where the supply line was not replaced with new; plumbing pipes, sewer lines, septic tanks, drain fields and drains that no longer flow or drain properly.

- While your property is unoccupied, Contractor is not responsible for, and will be held harmless for any thefts or break-ins or any other type losses that may occur to your structure or personal property.
- If any provision of this agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.
- The failure of either party to insist upon strict performance of any of the provisions of this agreement shall not be construed as a waiver of that default nor any subsequent default.

**Direct Pay, Non-Insurance**

If project does not relate to an insurance loss, Client agrees to this contract and to all the language that is contained within this document. Client agrees to a 25% deposit for the established amount of $ _____ or the projected amount of $ _____ that will be determined upon completion of the work.(Leave blank if no figure can be determined at this time.)

- **Authorization for Repairs, Renovations, Additions or Emergency Services (No Quote)**

    _____ Initial Client authorizes American Restoration, Contractor, to perform the work discussed but NOT yet specified by a written estimate. Client understands that due to the nature of some jobs, a written estimate cannot be provided up front. Once the job is completed, payment for the work will be paid within ten (10) days of the Invoice.

- **Authorization for Repairs, Renovations, Additions or Emergency Services (With Quote or Projection)**

    _____ Initial Client authorizes American Restoration, Contractor, to perform the work outlined in the quote that was provided. Payment for the full amount will be paid within ten (10) days of the invoice.

American Restoration Service Contract – Page 5-of-5

Initial:

010-020.5

Case 1:21-cv-00066-MR-WCM   Document 1-1   Filed 03/12/21   Page 17 of 19

AMERICAN RESTORATION
930 WENDOVER HEIGHTS DRIVE
SHELBY, NC 28150
704-482-7586



| DATE | INVOICE NO. | DUE DATE |
|---|---|---|
| 12/31/2018 | 19763 | 12/31/2018 |

| BILL TO | Job Location |
|---|---|
| Mandy Wyatt<br>107 Hawk Hollow Lane<br>Shelby, NC 28150<br>USA | Mandy Wyatt<br>107 Hawk Hollow Lane<br>Shelby, NC 28150<br>USA |

| PROJECT | Claim or Ref No. | TERMS | Project Manager |
|---|---|---|---|
| 18-0115-REC | 33-0893-Q29 | Due on receipt | Matt |

| DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|
| Reconstruction per adjuster revised estimate | 1 | 186,419.01 | 186,419.01 |
| Reconstruction Roof Demo - approved bid item | 1 | 4,750.00 | 4,750.00 |
| Reconstruction Building Code Upgrades as approved by adjuster | 1 | 6,961.62 | 6,961.62 |
| inventory of purchased fixtures overage | 1 | 188.25 | 188.25 |
| --------final agreed reconstruction total as agreed with insurer-----$198,130.63 | | | |
| ----------Change orders: | | | |
| Wok not done per estimate line items (per worksheet) to be exchanged for upgrades | -1 | 7,714.90 | -7,714.90 |
| Upgraded exchanges: Siding Upgrade, Paint Exterior, Exterior Trim upgrade to vinyl, Architectural shingle upgrade, closet door upgrade | 1 | 7,714.90 | 7,714.90 |
| Upgrades for Demo tubs and tile, demo deck over garage, demo wall under stairs, demo brick wall in foyer area, paint chimney | 1 | 3,000.00 | 3,000.00 |
| Flooring substitution upgrades | 1 | 1,446.73 | 1,446.73 |
| ____Total Reconstruct project: $202765.61 | | | |
| Less reimbursement for front porch concrete work due to damage caused by American Restoration | -1 | 1,800.00 | -1,800.00 |
| ===Final Invoiced Amount Due: $200,965.61=== | | | |
| Payments Received: | | | |
| State Farm Ck 1078385IRJ   $109,227.87 | | | |
| State Farm Ck 107859845J  $4,750.00 | | | |

| | |
|---|---|
| **Total** | $200,965.61 |
| **Payments/Credits** | -$113,977.87 |
| **Balance Due** | $86,987.74 |

EXHIBIT B

<u>Cleveland Co. File No. 21 CVS 95</u>

HMBC, Inc. d/b/a American Restoration

    vs.

State Farm Fire and Casualty Company, State Farm Mutual Automobile Insurance Company and Warren Douglas Harvey, its agent and employee

    I, Courtney H Ethridge, a Special Deputy duly appointed for the purpose, do hereby accept service of the **Civil Summons** of Plaintiff's HMBC, Inc. d/b/a American Restoration and adding State Farm Mutual Automobile Insurance Company as a Defendant, and acknowledge receipt of a copy of the same, together with a copy of the **Complaint [Breach of Contract, Assignment of Benefits**, under the provision of the North Carolina General Statute Section 58-16-30 as process agent for State Farm Mutual Automobile Insurance Company.

    This the 1st day of February, 2021.

                      MIKE CAUSEY
                      Commissioner of Insurance

                      Courtney H Ethridge
                      Special Deputy for
                      Service of Process